_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

OCT 30 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

The Honorable James L. Robart

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>STEVEN P. VERSCHOOR,<br><br>Defendant. | NO.  CR 19-208JLR<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Tessa M. Gorman, Attorney for the United States for the Western District of Washington, Acting Under Authority Conferred by 28 U.S.C. § 515, and Brian Werner and Matthew Diggs, Assistant United States Attorneys for said District, STEVEN P. VERSCHOOR, and his attorney, David Angeli, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1. **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2. **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Information:  Conspiracy to Pay Kickbacks Involving

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 1

1  Federal Health Care Programs, as charged in Count 1, in violation of Title 18, United

2  States Code, Section 371, and Title 42, United States Code, Section 1320a-7b(b)(2)(B).

3      By entering a plea of guilty, Defendant hereby waives all objections to the form of

4  the charging document.  Defendant further understands that before entering his guilty

5  plea, he will be placed under oath.  Any statement given by Defendant under oath may be

6  used by the United States in a prosecution for perjury or false statement.

7      **3.      Elements of the Offense**.  The elements of the offense to which Defendant

8  is pleading guilty, Conspiracy to Pay Kickbacks Involving Federal Health Care

9  Programs, as charged in Count 1, in violation of Title 18, United States Code, Section

10  371, and Title 42, United States Code, Section 1320a-7b(b)(2)(B), are as follows:

11      First, there was an agreement between two or more persons to commit the crime of

12  Paying Kickbacks Involving Federal Health Care Programs,

13      Second, Defendant became a member of the conspiracy knowing of at least one of

14  its objects and intending to help accomplish it, and

15      Third, at least one member of the conspiracy performed an overt act for the

16  purpose of carrying out the conspiracy.

17      The elements of the object offense of Paying Kickbacks Involving Federal Health

18  Care Programs are as follows:

19      First, Defendant knowingly and willfully made a payment or an offer of payment;

20      Second, defendant made such a payment, at least in part, in order to induce any

21  person to arrange for any service or arrange for ordering any service, or with the

22  knowledge that there was a high probability that the payment was made in order to

23  induce any person and deliberately failed to learn the truth; and

24      Third, that payment for the service may be made in whole or in part under

25  Medicare or another federal health care program.

26      **4.      The Penalties**.  Defendant understands that the statutory penalties

27  applicable to the offense to which he is pleading guilty are as follows:  For the offense of

28  Conspiracy to Pay Kickbacks Involving Federal Health Care Programs, as charged in

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Count 1:  A maximum term of imprisonment of up to five (5) years, a fine of up to $250,000, a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five (5) years.  Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements.  Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5.      **Rights Waived by Pleading Guilty.**  Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

      a.      The right to plead not guilty and to persist in a plea of not guilty;

      b.      The right to a speedy and public trial before a jury of his peers;

      c.      The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

      d.      The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      e.     The right to confront and cross-examine witnesses against Defendant
2          at trial;

3      f.     The right to compel or subpoena witnesses to appear on his behalf at
4          trial;

5      g.     The right to testify or to remain silent at trial, at which trial such
6          silence could not be used against Defendant; and

7      h.     The right to appeal a finding of guilt or any pretrial rulings.

8  **6.**     **Ultimate Sentence**. Defendant acknowledges that no one has promised or
9  guaranteed what sentence the Court will impose.

10  **7.**     **Restitution.** Defendant shall make restitution to Medicare in the amount of
11  $420,272.84, and to TRICARE in the amount of $41,479.26, with credit for any amounts
12  already paid. The parties agree that Defendant's $461,752.10 restitution obligation shall
13  be reduced by any amounts that Blackfly Investments, LLC, dba Molecular Testing Labs
14  ("MTL") pays pursuant to the Settlement Agreement with an effective date of December
15  10, 2018, between MTL and the United States (the "Settlement Agreement"). To receive
16  credit for MTL's payments, Defendant shall provide the Government and the Clerk of
17  Court with competent evidence and accounting of payments by MTL pursuant to the
18  Settlement Agreement.

19      a.     The full amount of restitution shall be due and payable immediately
20  on entry of judgment and shall be paid as quickly as possible. If the Court finds that the
21  defendant is unable to make immediate restitution in full and sets a payment schedule as
22  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule
23  represents a minimum payment obligation and does not preclude the U.S. Attorney's
24  Office from pursuing any other means by which to satisfy the defendant's full and
25  immediately-enforceable financial obligation, including, but not limited to, by pursuing
26  assets that come to light only after the district court finds that the defendant is unable to
27  make immediate restitution.

28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       b.      Defendant agrees to disclose, upon request by the Government, all

2   assets in which Defendant has any interest or over which Defendant exercises control,

3   directly or indirectly, including those held by a spouse, nominee, or third party.

4   Defendant agrees to cooperate fully with the United States' investigation identifying all

5   property in which Defendant has an interest and with the United States' lawful efforts to

6   enforce prompt payment of the financial obligations to be imposed in connection with

7   this prosecution.  Defendant's cooperation obligations are:  (1) upon request by the

8   Government, before sentencing, and no more than 30 days after executing this Plea

9   Agreement, truthfully and completely executing a Financial Disclosure Statement

10  provided by the United States Attorney's Office and signed under penalty of perjury

11  regarding Defendant's and Defendant's spouse's financial circumstances and producing

12  supporting documentation, including  tax returns, as requested; (2) providing updates

13  with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within

14  seven days of the event giving rise to the changed circumstances; (3) authorizing the

15  United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

16  providing waivers, consents or releases requested by the U.S. Attorney's Office to access

17  records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

18  inspect and copy all financial documents and information held by the U.S. Probation

19  Office; (6) submitting to an interview regarding Defendant's Financial Statement and

20  supporting documents before sentencing (if requested by the United States Attorney's

21  Office), and fully and truthfully answering questions during such interview; and (7)

22  notifying the United States Attorney's Office before transferring any interest in property

23  owned directly or indirectly by Defendant, including any interest held or owned in any

24  other name, including all forms of business entities and trusts.

25      c.      The parties acknowledge that voluntary payment of restitution prior

26  to the adjudication of guilt is a factor the Court considers in determining whether

27  Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In

28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 5

1   addition, in any event, the government will consider Defendant's cooperation regarding

2   restitution in making its sentencing recommendation.

3       **8.**   **Statement of Facts.**   The parties agree on the following facts.  Defendant

4   admits he is guilty of the charged offense:

5           a.      Defendant STEVEN P. VERSCHOOR is a co-founder of Molecular

6   Testing Labs (MTL).  MTL began operations in July 2013.  In 2014 and 2015,
    VERSCHOOR was the Vice President of Global Sales and Marketing for MTL.  None of

7   MTL's founders, including VERSCHOOR, had any prior experience in the health care

8   industry.  MTL is a full-service laboratory located in Vancouver, Washington, that
    provides a range of services, including urine toxicology testing.  MTL was an approved

9   Medicare provider and regularly submitted claims to Federal health care programs, as

10  that term is defined in Title 42, United States Code, Section 1320a-7b(f)(1), including to
    Medicare and TRICARE.

11

12          b.      Urine toxicology testing is often ordered for patients that are being
    seen by a physician for pain management and prescribed opioids or similar medications.

13  These patients may be directed to submit urine specimens for toxicology testing in order

14  to monitor the levels of pain medication or other narcotics in their bodies.  These urine
    specimens are usually sent to an outside laboratory that run a particular panel of tests

15  based on the physicians' orders.  Testing laboratories typically bill the patients'

16  commercial insurance, or bill a Federal health care program, or the patient himself or
    herself, for performing urine toxicology testing.  Urine toxicology testing is a covered

17  service under Medicare and TRICARE, and most private commercial insurance, so long

18  as the testing is reasonable and medically necessary.

19          c.      Northwest Physicians Laboratory (NWPL) is a toxicology laboratory

20  located in Bellevue, Washington.  NWPL was partially owned by physicians, and was
    associated with a large group of pain management physicians that had numerous

21  locations throughout the greater Seattle area.  Many of these physicians directed their

22  patients to submit urine specimens for toxicology testing.  NWPL received urine
    specimens for toxicology testing from its physician owners.  However, because it was

23  physician-owned, NWPL did not test urine specimens from patients with Federal

24  insurance like Medicare or TRICARE.  NWPL's employees arranged for these urine
    specimens to be tested at other laboratories.

25

26          d.      In 2014, STEVEN P. VERSCHOOR wanted to increase the number
    of urine toxicology tests performed at MTL.  Accordingly, VERSCHOOR wanted NWPL

27  to send urine specimens from its Bellevue location to MTL, so those specimens could be

28  tested at MTL, and so that MTL could bill insurance for those tests.  VERSCHOOR was
    told by NWPL CEO J.L., that, in order to receive urine specimens from NWPL,

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  VERSCHOOR would be required to sign a document called an "Administrative Services
2  Agreement" that required MTL to make certain payments to NWPL.

3          e.      Prior to reviewing or signing an agreement, STEVEN P.
4  VERSCHOOR and J.L. and others agreed that NWPL would send approximately 500
   urine specimens for toxicology testing to MTL, and in return, MTL would pay NWPL
5  $50,000 per month.  VERSCHOOR and others, including J.L., further agreed that, by late
6  2014, NWPL would send at least 1000 urine specimens for toxicology testing to MTL,
   and in return, MTL would pay NWPL $100,000 per month.
7

8          f.      On September 12, 2014, STEVEN P. VERSCHOOR received a draft
   Administrative Services Agreement from M.W., who sent it at the direction of J.L.  The
9  draft Administrative Services Agreement required NWPL to provide certain services to
   MTL, including marketing services for trained NWPL representatives to solicit, arrange
10 for, and recommend potential physician customers to use MTL lab testing.  The draft
11 Administrative Services Agreement required MTL to pay NWPL $68,500 per month for
   marketing services.  This amount was based on supposed salary and expenses for 11 full-
12 time NWPL employees to market MTL.  The Administrative Services Agreement also
13 required MTL to pay NWPL to perform other services including customer training and
   specimen processing.
14

15         g.      The draft Administrative Services Agreement was dated October 1,
   2014, and it required MTL to pay NWPL $99,959 per month (including the $68,500 for
16 marketing services) for a period of 12 months.  The first $99,959 payment was due on
17 November 1, 2014.  The draft agreement also required MTL to pay NWPL $50,000 on
   October 1, 2014, for services rendered in September 2014.
18

19         h.      STEVEN P. VERSCHOOR reviewed the amounts to be paid and the
   services that were supposed to be performed by NWPL, under the draft Administrative
20 Services Agreement and, without suggesting any changes, sent the draft Administrative
   Services Agreement to MTL's Chief Compliance Officer for review.  VERSCHOOR
21 knew that MTL's Chief Compliance Officer and its outside legal counsel had recently
22 reviewed and approved a similar agreement that MTL had entered into, and J.L. assured
   VERSCHOOR that NWPL's legal counsel had approved this arrangement.
23 VERSCHOOR was also informed that NWPL had in place a similar agreement with a
24 large, national toxicology laboratory. On September 13, 2014, after receiving the draft
   Administrative Services Agreement back from MTL's Chief Compliance Officer, who
25 made some minor changes, VERSCHOOR signed the Administrative Services
26 Agreement and returned it to NWPL.  Shortly thereafter, the CEO of NWPL counter-
   signed the Administrative Services Agreement.
27

28

i.      Shortly after the Administrative Services Agreement was signed, beginning in September 2014, NWPL employees arranged for urine specimens to be sent from the NWPL laboratory in Bellevue, Washington, to MTL.  These urine specimens included specimens from patients insured by Medicare and TRICARE.  Between September 2014 and June 2015, NWPL employees caused over 1500 urine specimens from patients with Federal insurance to be sent from Bellevue to MTL's Vancouver laboratory; during this time MTL conducted toxicology testing on these urine specimens; and MTL submitted claims for payment for more than $2,000,000 for this urine toxicology testing to Federal health care programs.  In total, during this time period, MTL received approximately $461,752.10 for these submissions.

j.      STEVEN P. VERSCHOOR caused MTL to make $50,000 payments to NWPL every month from October 2014 through June 2015; the total amount of payments from MTL to NWPL was $450,000.  The monthly payment amount was $50,000 because VERSCHOOR and others, including J.L., agreed that MTL would pay $50,000 per month, not $99,959 per month as required by the Administrative Services Agreement, because NWPL was not sending the expected number of urine specimens to MTL.

k.      Eventually, in April 2015, J.L. requested that STEVEN P. VERSCHOOR sign a new version of the Administrative Services Agreement.  The new version of the Administrative Services Agreement was back-dated to October 1, 2014.  This new version of the Administrative Services Agreement attached a new list of services that were allegedly provided by NWPL to MTL.  The new version of the Administrative Services Agreement changed the monthly service fee to $50,000, which matched the amount that VERSCHOOR had caused MTL to pay.  VERSCHOOR reviewed the numbers in the new version but did not suggest any changes.  VERSCHOOR and J.L. signed the new, backdated version of the Administrative Services Agreement on or about April 30, 2015.

l.      STEVEN P. VERSCHOOR was aware that there was a high probability that NWPL was not actually performing the marketing and other services as required by the Administrative Services Agreement.  Therefore, VERSCHOOR was aware that there was a high probability that the payments from MTL to NWPL were made, at least in part, to induce NWPL employees to arrange for urine specimens, the testing of which had been ordered by NWPL physicians, to be sent to MTL for testing.  For example, VERSCHOOR knew the name of only one of the 11 full-time NWPL employees that were supposedly marketing MTL's services.  VERSCHOOR did not closely track whether any NWPL sales representatives were actually marketing MTL's services, despite the fact that MTL closely tracked other sales representatives that were paid to market MTL's services.  The evidence available to VERSCHOOR indicated that NWPL was not actually marketing MTL's services to physicians.  VERSCHOOR

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  deliberately failed to learn the truth as to whether NWPL was actually performing
2  services for MTL that were described in the Administrative Services Agreement.

3          m.      At all times relevant to this Plea Agreement, STEVEN P.
4  VERSCHOOR understood that it is illegal to pay to induce a party to arrange for MTL to
   conduct urine toxicology testing for which payment is made under a Federal health care
5  program.

6          n.      STEVEN P. VERSCHOOR admits that the $450,000 in payments to
7  NWPL were illegal payments that were made to induce NWPL employees to arrange for
   toxicology testing by MTL for which payment was made in whole or in part under a
8  Federal health care program.

9      **9.      United States Sentencing Guidelines**.  Defendant understands and
10 acknowledges that the Court must consider the sentencing range calculated under the
11 United States Sentencing Guidelines and possible departures under the Sentencing
12 Guidelines together with the other factors set forth in Title 18, United States Code,
13 Section 3553(a), including:  (1) the nature and circumstances of the offense; (2) the
14 history and characteristics of the defendant; (3) the need for the sentence to reflect the
15 seriousness of the offense, to promote respect for the law, and to provide just punishment
16 for the offense; (4) the need for the sentence to afford adequate deterrence to criminal
17 conduct; (5) the need for the sentence to protect the public from further crimes of the
18 defendant; (6) the need to provide the defendant with educational and vocational training,
19 medical care, or other correctional treatment in the most effective manner; (7) the kinds
20 of sentences available; (8) the need to provide restitution to victims; and (9) the need to
21 avoid unwarranted sentence disparity among defendants involved in similar conduct who
22 have similar records.  Accordingly, Defendant understands and acknowledges that:
23          a.      The Court will determine Defendant's applicable Sentencing
24 Guidelines range at the time of sentencing;
25          b.      After consideration of the Sentencing Guidelines and the factors in
26 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the
27 maximum term authorized by law;
28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          c.     The Court is not bound by any recommendation regarding the

2 sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

3 range offered by the parties or the United States Probation Department, or by any

4 stipulations or agreements between the parties in this Plea Agreement; and

5          d.     Defendant may not withdraw his guilty plea solely because of the

6 sentence imposed by the Court.

7     **10.**   **Acceptance of Responsibility.**  At sentencing, *if* the district court

8 concludes Defendant qualifies for a downward adjustment acceptance for acceptance of

9 responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or

10 greater, the United States will make the motion necessary to permit the district court to

11 decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b),

12 because Defendant has assisted the United States by timely notifying the United States of

13 his intention to plead guilty, thereby permitting the United States to avoid preparing for

14 trial and permitting the Court to allocate its resources efficiently.

15     **11.**   **Sentencing Factors.**  The parties agree that the following Sentencing

16 Guidelines provisions apply to this case:

17          a.     A base offense level of 8, pursuant to USSG § 2B4.1(a);

18          b.     A 12-level increase, pursuant to USSG § 2B4.1(b) and

19 2B1.1(b)(1)(H), because the total amount of the payment was greater than $250,000, but

20 less than $550,000.

21     Further, the parties agree that the Court may consider as an additional sentencing

22 factor pursuant to 18 U.S.C. § 3553(a), that STEVEN P. VERSCHOOR was diagnosed

23 with melanoma in September 2014.  Between September 2014 and January 2015,

24 VERSCHOOR underwent multiple surgeries and treatments.  In January 2015,

25 VESRCHOOR began treatments pursuant to a clinical trial at the Huntsman Cancer

26 Institute in Utah.  Recently, VERSCHOOR was diagnosed with advanced metastatic

27 melanoma.  Further, the parties agree that the Court may, pursuant to 18 U.S.C.

28 § 3553(a), consider VERSCHOOR's physical condition at the time of sentencing.

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a). Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

**12.     Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

**13.     Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 11

1   Defendant further understands that if, after the date of this Agreement, Defendant
2   should engage in illegal conduct, or conduct that violates any conditions of release or the
3   conditions of his confinement, (examples of which include, but are not limited to,
4   obstruction of justice, failure to appear for a court proceeding, criminal conduct while
5   pending sentencing, and false statements to law enforcement agents, the Pretrial Services
6   Officer, Probation Officer, or Court), the United States is free under this Agreement to
7   file additional charges against Defendant or to seek a sentence that takes such conduct
8   into consideration by requesting the Court to apply additional adjustments or
9   enhancements in its Sentencing Guidelines calculations in order to increase the applicable
10   advisory Guidelines range, and/or by seeking an upward departure or variance from the
11   calculated advisory Guidelines range.  Under these circumstances, the United States is
12   free to seek such adjustments, enhancements, departures, and/or variances even if
13   otherwise precluded by the terms of the plea agreement.

14   **14.   Waiver of Appellate Rights and Rights to Collateral Attacks.**
15   Defendant acknowledges that by entering the guilty plea(s) required by this plea
16   agreement, Defendant waives all rights to appeal from his conviction and any pretrial
17   rulings of the court.  Defendant further agrees that, provided the court imposes a custodial
18   sentence that is within or below the Sentencing Guidelines range (or the statutory
19   mandatory minimum, if greater than the Guidelines range) as determined by the court at
20   the time of sentencing, Defendant waives to the full extent of the law:

21   a.   Any right conferred by Title 18, United States Code, Section 3742,
22   to challenge, on direct appeal, the sentence imposed by the court, including any fine,
23   restitution order, probation or supervised release conditions, or forfeiture order (if
24   applicable); and

25   b.   Any right to bring a collateral attack against the conviction and
26   sentence, including any restitution order imposed, except as it may relate to the
27   effectiveness of legal representation; and

28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       This waiver does not preclude Defendant from bringing an appropriate motion

2   pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the

3   decisions of the Bureau of Prisons regarding the execution of his sentence.

4       If Defendant breaches this Plea Agreement at any time by appealing or collaterally

5   attacking (except as to effectiveness of legal representation) the conviction or sentence in

6   any way, the United States may prosecute Defendant for any counts, including those with

7   mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

8   Agreement.

9       **15.    Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea

10  Agreement freely and voluntarily and that no threats or promises, other than the promises

11  contained in this Plea Agreement, were made to induce Defendant to enter his plea of

12  guilty.

13      **16.    Statute of Limitations**.  In the event this Agreement is not accepted by the

14  Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

15  the statute of limitations shall be deemed to have been tolled from the date of the Plea

16  Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea

17  Agreement by the Court; or (2) thirty (30) days following the date on which a breach of

18  the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19      **17.    Completeness of Agreement**.  The United States and Defendant

20  acknowledge that, except as to certain matters set forth during the plea colloquy in open

21  court, these terms constitute the entire Plea Agreement between the parties.  This

22  Agreement binds only the United States Attorney's Office for the Western District of

23  //

24  //

25

26

27

28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Washington.  It does not bind any other United States Attorney's Office or any other

2    office or agency of the United States, or any state or local prosecutor.

3

4            Dated this **30** day of October, 2019.

5

6                                                            _____

7                                                            STEVEN P. VERSCHOOR
                                                             Defendant

8                                                            _____

9                                                            DAVID ANGELI
                                                             Attorney for Defendant

10

11                                                           _____

12                                                           BRIAN WERNER
                                                             MATTHEW DIGGS

13                                                           Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Steven P. Verschoor*, CR 19-208JLR
Plea Agreement- 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970